1
2
3
4
5
6
7
8               **UNITED STATES DISTRICT COURT**

9               **EASTERN DISTRICT OF CALIFORNIA**

10

11   MICHAEL BRASHEAR, et al.,            )   Case No.: 1:20-cv-0505 - NONE JLT
                                          )
12               Plaintiffs,              )   FINDINGS AND RECOMMENDATIONS
                                          )   GRANTING DEFENDANTS' MOTION TO
13        v.                              )   COMPEL ARBITRATION
                                          )
14   HALLIBURTON ENERGY SERVICES, INC.,   )   (Doc. 10)
                                          )
15               Defendant.               )
                                          )
16   _____)

17        Michael Brashear, Benito Contreras, Kenneth Dollar, Terry Foster, and Ricardo Rodriguez are

18   employed by Halliburton Energy Services, Inc. and seek to hold their employer liable for wage and

19   hour violations under California law.  (*See* Doc. 1)  Halliburton asserts Plaintiffs agreed to arbitrate

20   claims arising out of their employment and seeks to compel arbitration.  (Doc. 10)

21        The Court found the matter suitable for decision without oral arguments, and the motion was

22   taken under submission on August 6, 2020.  (Doc. 1)  For the following reasons, the Court recommends

23   Defendant's motion to compel arbitration be **GRANTED** and the action be **STAYED**.

24   **I.       Background**

25        Plaintiffs allege they are nonexempt employees who did not "earn twice minimum wage" as

26   employees of Halliburton.  (Doc. 1 at 3, ¶13) In 2008, Terry Foster began working as an Associate

27   Field Professional in Halliburton's Wireline Perforating Services Department and has remained "a non-

28   exempt Field Professional approximately twelve years." (Doc. 10-2 at 3, Merritt Decl. ¶ 6; Doc. 1 at 2,

¶ 10)  Ricardo Marin Rodriguez began his employment with Halliburton in 2010 as a Service Operator, but since June 2017 has been employed in a cement position. (Doc. 1 at 3, ¶ 11)  Benito Contreras was hired in 2011 as a Service Operator, though his position was specifically "an LP01-ESG-Operator Asst I-L&P in Halliburton's Open Hole Logging Department."  (Doc. 1 at 2, ¶ 8; Doc. 10-2 at 3, Merritt Decl. ¶ 9)  Similarly, Michael Brashear was initially hired in 2013 as a Service Operator in the "LP01-Operator Asst I-L&P" position.  (Doc. 1 at 3, ¶ 12; Doc. 10-2 at 3, Merritt Decl. ¶ 7)  After being laid off, Brashaer returned to Halliburton in 2017 in the Service Operator position of LP02-Operator Assistant II-L&P.  (Doc. 1 at 3, ¶12; Doc. 10-2 at 3, Merritt Decl. ¶ 8)  Kenneth Dollar was employed by Halliburton as a Field Professional from February 2018 to April 2020.  (Doc. 1 at 3; Doc. 10-2 at 2-3, Merritt Decl. ¶ 5)

Plaintiffs each executed offer letters to accept their positions with Halliburton.  (*See* Doc. 10-2 at 31-61)  These offer letters included the terms of employment—including the salary and benefits—and informed Plaintiffs that their acceptance of the positions meant they agreed to be bound to Halliburton's Dispute Resolution Program.  (*See id.*)  Specifically, the offer letters executed by Foster, Contreras, and Brashear (in 2013) provide in relevant part:

> Your acceptance of employment means you also agree to and are bound by the terms of the Halliburton Dispute Resolution Program, effective January 1, 1998.  The Halliburton Dispute Resolution Program binds the employee and the Company to handle workplace problems through a series of measures designed to bring a timely resolution. This will be truth both during your employment and after your employment should you terminate.

(Doc. 10-2 at 38 [Foster], 42 [Brashear], 53 [Contreras])  In addition, the offer letters executed in 2017 and 2018 by Brashear, Rodriguez, and Dollar provide in relevant part:

> Your decision to accept employment constitutes your agreement to resolve all employment related disputes with your employer by arbitration under the Halliburton Dispute Resolution Program ("DRP").  A copy of the DRP Plan and Rules may be accessed at the Halliburton website at http://www.halliburton.com/public/pubsdata/related_docs/DRP_Plan_Rules.pdf. Under the DRP, all employment disputes that are not otherwise resolved by mutual agreement must be arbitrated under the DRP rules. This agreement is binding on both you and the company.  This agreement constitutes a waiver of your right to a jury trial.  The arbitrator shall apply the substantive law applicable to the dispute and shall not abridge or enlarge the legal rights, remedies or defenses of the parties.  The decision of the arbitrator shall be final and binding on you and the company and may be confirmed in, and judgment upon the award entered by, any court of competent jurisdiction.  The DRP is herein incorporated by reference.  By signing and returning this letter, you acknowledge that you have reviewed the DRP and agree to its terms.

(Doc. 10-2 at 48 [Brashear 2017], 59 [Rodriguez]; Doc. 24 at 7 [Dollar])

Plaintiffs allege they "perform physical and repetitive labor" for Halliburton on oil wells.  (Doc. 1 at 3, ¶ 13)  Plaintiffs report the Service Operators position requires the employees—including Brashear, Contreras, and previously Rodriguez— to "load the company trucks and drive them."  (*Id.*) In addition, they report Field Service Professionals, such as Foster and Dollar, to "calibrate the equipment and prepare paperwork at the shop" and "call[] in others while they are on their way to the shop." (*Id.*)

According to Plaintiffs, their work schedules are written for an entire year, and "[t]he only way Plaintiffs get work is to pick up their phones when they are on a six day on-call schedule."  (Doc. 1 at 3, ¶v13)  Plaintiffs report: "They are supposed to pick up their phones immediately and arrive at the shop within an hour of when they get the call.  Sometimes they have to be at the shop sooner."  (*Id.*) They report Halliburton employees "are disciplined if they do not pickup their phones fast enough," and the discipline may include "being put at the bottom of the call schedule.  (*Id.*) Plaintiffs report they were not issued cell phones and used "their [personal] cell phones to accept the on-call calls, and otherwise communicate with [Halliburton] about work related issues."  (*Id.*, ¶v14)  They report they are not paid for time spent "waiting to be called in to work notwithstanding they are supposed to answer their phones immediately when called…, and report into the shop within 1 hour or less."  (*Id.*, ¶v15)

On April 9, 2020, Plaintiffs initiated this action by filing a complaint, asserting the following claims for relief: (1) minimum wage violations under Cal. Labor Code § 1194, (2) overtime and double time violations under Cal. Labor Code § 1194, (3) violations of California's controlled standby and/or report time law, (4) "common count for work and labor performed (quantum meriut)", (5) penalties under Cal. Labor Code § 226, (6) failure to provide reimbursement for cellular phone bills under Cal. Lab. Code § 2802, and (7) violations of California's Business and Professions Code.  (*See generally* Doc. 1 at 1, 4-10)

On July 9, 2020, Halliburton filed the motion to compel arbitration now pending before the Court, asserting Plaintiff previously agreed to arbitrate claims encompassed in this lawsuit.  (Doc. 10) Halliburton observes, "Each Plaintiff signed agreements in which they agreed to be bound by the DRP." (Doc. 10-1 at 7)  In addition, the company "provided each Plaintiff hard-copies of updated versions of

the DRP via the internet and a mailing program." (*Id.*) Thus, Halliburton contends "Plaintiffs [should] be compelled to submit their claims to individual arbitration." (*Id.*) Plaintiffs filed their opposition to the motion on July 27, 2020 (Doc. 17), to which Halliburton filed a reply on August 3, 2020 (Doc. 19).

## II.      Halliburton's Dispute Resolution Program

Halliburton implemented the Dispute Resolution Program ("DRP") for disputes "[b]etween the Company and the Company's present and former Employees and Applicants for employment, including those related to or arising out of a current, former or potential employment relationship with the Company." (Doc. 10-3 at 7, DRP §1)  Halliburton asserts its "DRP sets forth a detailed plan for resolution of employment-related disputes without the expense and delay of court litigation." (Doc. 10-1 at 7)

Disputes covered by the DRP include "all legal and equitable claims, demands, and controversies, of whatever nature or kind, whether in contract, tort, under statute or regulation, or some other law, between persons bound by the Plan . . ." (Doc. 10-3 at 8, DRP § 2(E))  Thus, the DRP encompasses disputes related to "the terms, conditions, or termination of such employment," "benefits or incidents of employment," and "allegations of discrimination based on race, sex, religion, national origin, age, veteran status or disability; sexual or other kind of harassment; wrongful discharge;... [and] failure to pay wages." (*Id.*)

Under the DRP, parties may engage in individual arbitration to resolve their disputes.  (*See* Doc. 10-3 at 10, DRP § 4)  Class actions, collective actions, and consolidated claims are not permitted "unless all parties to the Dispute consent in writing." (*Id.*)  A party "may initiate proceedings [under the DRP] by serving a written request to initiate proceedings on [the American Arbitration Association] or [Judicial Arbitration and Mediation Services]" or serving a written request to Halliburton's Dispute Resolution Plan Administrator. (*Id.* at 16-17, Resolution Rules § 3)  Employees initiating arbitration are required to pay a $50 fee, while "[i]f the demand for mediation or arbitration is initiated by [Halliburton], such fees will be paid by the Company." (*Id.* at 25-26, Resolution Rules § 31(E),(F))

## III.     Legal Standard

The Federal Arbitration Act applies to arbitration agreements in any contract affecting interstate commerce and "governs the allocation of authority between courts and arbitrators." *Cox v.*

4

1   *Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008); *Circuit City Stores, Inc. v. Adams*, 532

2   U.S. 105, 119 (2001); 9 U.S.C. § 2.  The FAA provides that written arbitration agreements "shall be

3   valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the

4   revocation of any contract."  9 U.S.C. § 2. This provision "create[s] a body of federal substantive law

5   of arbitrability applicable to any arbitration agreement within the coverage of the Act."  *Moses H.*

6   *Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).  A party seeking to enforce an

7   arbitration agreement may petition the Court for "an order directing the parties to proceed to

8   arbitration in accordance with the terms of the agreement."  9 U.S.C. § 4.

9        Generally, the Court's role in applying the FAA is "limited to determining whether a valid

10  agreement to arbitrate exists and, if so, whether the agreement encompasses the dispute as issue."

11  *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). If the response is

12  affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in

13  accordance with its terms." *Chiron Corp. v. Ortho Diagnostic Systems*, 207 F.3d 1126, 1130 (9th Cir.

14  2000). Thus, a court shall stay or dismiss an action for arbitration proceedings to occur.  *See* 9 U.S.C.

15  §§ 3, 4; *see also Delgadillo v. James McKaone Enters. Inc.*, 2012 WL 4027019 at *3 (E.D. Cal. Sept.

16  12, 2012) (if the court "determines that an arbitration clause is enforceable, it has the discretion to

17  either stay the case pending arbitration, or to dismiss the case if all of the alleged claims are subject to

18  arbitration"). Because the FAA "is phrased in mandatory terms," "the standard for demonstrating

19  arbitrability is not a high one [and] a district court has little discretion to deny an arbitration motion."

20  *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 475 (9th Cir. 1991).

21       "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of

22  arbitration."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).  As a

23  result, arbitration should only be denied when "it may be said with positive assurance that the

24  arbitration clause is not susceptible of an interpretation that covers the asserted dispute."  *AT&T Tech.,*

25  *Inc. v. Communs. Workers of Am.*, 475 U.S. 643, 650 (1986).  It is well-established that "arbitration

26  provides a forum for resolving disputes more expeditiously and with greater flexibility than litigation."

27  *Lifescan*, 363 F.3d at 1011.

28       A party opposing arbitration has the burden to demonstrate the claims at issue should not be

1  sent to arbitration. *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 81 (2000); *see also*

2  *Mortensen v. Bresnan Communications LLC*, 722 F.3d 1151, 1157 (9th Cir. 2013) ("the parties

3  challenging the enforceability of an arbitration agreement bear the burden"). An arbitration agreement

4  may "be invalidated by 'generally applicable contract defenses, such as fraud, duress, or

5  unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from

6  the fact that an agreement to arbitrate is at issue." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333,

7  340 (2011) (quoting *Doctor's Assocs. Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)). In addition, a party

8  may show a claim should not be sent to arbitration if the right to arbitration has been waived. *Fisher v.*

9  *A.G. Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir. 1986).

10  **IV.    Discussion and Analysis**

11        Plaintiffs contend the motion to compel arbitration should be denied because they "worked in

12  the interstate transportation industry exempting them from arbitration" under the FAA. (Doc. 17 at 10,

13  emphasis omitted) In addition, Plaintiffs assert there was no agreement to arbitrate, because Plaintiffs

14  "did not sign papers mentioning the word arbitration and mention the word agree to waive jury trial

15  and arbitrate." (*Id.* at 1; *see also id.* at 8-10) Further, Plaintiffs argue Halliburton's arbitration

16  agreement is unconscionable. (*Id.* at 3-47) On the other hand, Halliburton asserts the FAA governs

17  the claims before the Court and there is a valid arbitration agreement between each of the plaintiffs

18  and Halliburton. (*See generally* Doc. 10 at

19        **A.    Whether Plaintiffs are Exempt from the FAA**

20        As an initial matter, the parties disagree as to whether Plaintiffs are "transportation workers,"

21  and whether the exception of Section 1 of the FAA applies to the matter before the Court. (Doc. 17 at

22  10-13; Doc. 19 at 11-14) In relevant part, Section 1 of the FAA provides: "nothing herein contained

23  shall apply to contracts of employment of seamen, railroad employees, or any other class of workers

24  engaged in foreign or interstate commerce." 9 U.S.C. § 1; *see also E.E.O.C. v. Waffle House, Inc.*,

25  534 U.S. 279, 289 (2002) ("Employment contracts, except for those covering workers engaged in

26  transportation, are covered by the FAA.").

27        The Supreme Court reviewed the exemption in *Circuit City Stores Inc. v. Adams*, 532 U.S. 105,

28  110 (2001). In *Circuit City*, the Court reviewed the phrase "any other class of workers engaged in

foreign or interstate commerce" to determine the scope and determined the phrase does not refer to *all* workers in foreign or interstate commerce, but rather only "transportation workers." *Id.*, 532 U.S. at 112.  The Court defined "transportation workers," as "those workers actually engaged in the movement of goods in interstate commerce." *Id.* at 112 (internal quotations and citations omitted).

Plaintiffs contend, "There is no question that the work they do is part of the transportation industry."  (Doc. 17 at 13)  Plaintiffs maintain that as "oil field workers," "[w]ithout the work Plaintiffs do the transportation industry would not run." (*Id.* at 12-13) They report their jobs involve driving to oil sites and several have transported Halliburton crew members—occasionally including Halliburton employees from other states—between job sites in Kern County.  (Doc. 17 at 11-12)

Brashear reports he can spend "between 45 minutes to 3 hours" driving a company truck "from Halliburton's yard in Bakersfield to the job site where oil is being drilled" in his position as a Service Operator.  (Doc. 17-2 at 2, Brashear Decl. ¶2) He reports he has a Class A license to drive the truck with air brakes and may "carry crew and tools" between sites.  (*Id.*) Brashear keeps "a DOT logbook for [his] driving…due to the types of trucks" he drives for Halliburton."  (*Id.*)  In addition, Brashear asserts that "Halliburton employees come from other states to work on crews" he works on, and the employees are transported to the job sites in trucks such as those driven by Brashear, Dollar, and Terry. (*Id.* at 2, ¶4[1])

Similarly, Contreras and Rodriguez—who are also Service Operators— report they have Class A licenses, keep a DOT log, and drive Halliburton's trucks from the Bakersfield yard to oil drilling sites, carrying employees and tools.  (Doc. 17-3 at 2, Contreras Decl. ¶2; Doc. 17-6 at 2, Rodriguez Decl. ¶2) In addition, Contreras states he drove Halliburton's truck to job sites in Oregon and Utah "so he could bring tools and employees there and work."  (*Id.*, ¶ 3)  In total, Plaintiffs report they could "spend up to six hours a day driving on interstate highways" between the Halliburton yard and oil drilling job sites."  (*See* Doc. 17 at 13)

Dollar and Foster, who worked as Field Service Professionals, state they would "[s]ometimes" drive a truck between job sites, including on interstate highways. (Doc. 17-4 at 2, Dollar Decl. ¶2;

---

[1] The paragraphs in the declaration are mis-numbered. For the sake of clarity, the Court has retained the numbers used by Brashear in his declaration.

Doc. 17-5 at 2, Foster Decl. ¶2)  Further, Foster reports that in 2018, he "drove employees of Halliburton from Louisiana and Texas (at different times) from the Bakersfield yard to [the] job sites." (Doc. 17-5 at 2, Foster Decl. ¶3)  According to Foster, both Field Service Professionals and Service Operators "used the trucks… to drive out of state to Halliburton jobs," including "coworkers [who] were sent to work in Oregon."  (*Id.,* ¶4)  Trucks driven by Field Service Professionals did not require a special driver's license.  (*See* Doc. 17 at 12)

On the other hand, Halliburton argues Plaintiffs are not transportation workers within the meaning of the FAA's exception.  (Doc. 19 at 12-13)  Halliburton contends "Plaintiffs are not employed by Halliburton as drivers," and that, in Plaintiffs' description of their job duties in the Complaint, Plaintiffs reported they "perform physical and repetitive labor for Defendant on oil wells." (*Id.* at 13, quoting Doc. 1, ¶13) Halliburton notes Plaintiffs alleged in the Complaint that "Service Operators drive Halliburton trucks for the explicit purpose of transporting people and equipment to the work site where they will perform their actual jobs."  (*Id.*)  Further, Halliburton observes: "Even in the declarations prepared expressly to support their claims that they were transportation workers, Plaintiffs admitted that the only driving they did in Halliburton vehicles was to and from their assigned job site, where they performed their actual job duties."  (*Id.*, citing Doc. 17-2, Brashear Decl. ¶ 2; Doc. 17-3, Contreras Decl. ¶ 2; Doc. 17-4, Dollar Decl. ¶ 2; Doc. 17-5, Foster Decl. ¶ 2; Doc. No. 17-6, Rodriguez Decl. ¶ 2)  According to Halliburton, "The driving completed by Plaintiffs is therefore clearly incidental to the primary duties of their positions with Halliburton, and driving to and from a job site does not render Plaintiffs "transportation workers" …"  (*Id.*)

Halliburton asserts the facts before the Court are analogous to those considered by the Eleventh Circuit in *Hill v. Rent-A-Center, Inc*., 398 F.3d 1286, 1289 (11th Cir. 2005).  (Doc. 19 1 at 13-14) In *Hill*, the Eleventh Circuit determined "an account manager who, as part of his job, delivered furniture and appliances across the Georgia – Alabama border was not exempted from the FAA as a transportation worker."  (*Id.*, citing *Hill*, 398 F.3d at 1290)  The Court noted the emphasis in the FAA exception "was on a class of workers in the transportation industry, rather than on workers who incidentally transported goods interstate as part of their job in an industry that would otherwise be unregulated."  *Hill*, 398 F.3d at 1289.  Thus, the Court found that even if a worker transported goods

across state lines, that fact alone does not mandate a determination that individual is a transportation worker, if the employee was not employed in the transportation industry. *Id.* at 1290.  As Halliburton observes, the Eleventh Circuit found "no indication that Congress would be any more concerned about the regulation of the interstate transportation activity incidental to Hill's employment as an account manager, than it would be in regulating the interstate 'transportation' activities of an interstate traveling pharmaceutical salesman, […] or a pizza delivery person who delivered pizza across a state line." *Id.* at 1289-1290)

Significantly, the record before the Court establishes that driving is incidental to Plaintiffs' job duties. In their complaint, Plaintiffs described their jobs as "physical and repetitive labor… on oil wells [Halliburton] provides services for third parties on." (Doc. 1 at 3, ¶ 13) Further, Plaintiffs do not establish that they transport "goods" for Halliburton. Rather, the individuals who drove Halliburton trucks transported other employees to job sites and the tools required at the oil wells.  (*See, e.g.* Doc. 17-2 at 2, Brashear Decl. ¶ 2 [reporting he may "carry crew and tools" between sites]; Doc. 17-3 at 2, Contreras Decl. ¶ 2 [stating he drove "tools and employees" to job sites]).  These facts fail to demonstrate that Halliburton was in the transportation industry or that Plaintiffs are "transportation workers."

A "transportation worker" subject to the FAA exception "is someone who works in the transportation industry— an industry whose mission it is to move goods." *Tran v. Texan Lincoln Mercury, Inc.*, 2007 WL 2471616 (S.D. Tex. Aug. 29, 2007); *see also Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 505 (4th Cir. 2002) (looking to the industry in which the plaintiff worked and the plaintiff's work assignments to find it was not a "transportation" industry). Here, there is no indication that the mission of Halliburton is to move goods.  Rather, Plaintiffs allege their work revolves around oil well digging, and the record supports a conclusion that they are employed in the oil/energy industry.  (*See* Doc. 1 at 3, ¶13) (noting plaintiffs must calibrate equipment at the Halliburton shop prior to going to oil well locations, and "[i]f Plaintiffs show up too late the oil can swell"). Because Plaintiffs are not employed in the transportation industry, the FAA exception does not apply.  *See, e.g, Hill*, 398 F.3d at 1289 ("it is apparent Congress was concerned only with giving the arbitration exemption to 'classes' of transportation workers within the transportation industry"); *Lenz v. Yellow Transp., Inc.*, 431 F.3d 348,

351 (8th Cir. 2005) ("The emphasis [of the § 1 exclusion, therefore,] was on a class of workers *in the transportation industry*") (brackets in original, emphasis added); *see also*

### B. Involvement in Interstate Commerce

"[T]he FAA applies to employment contracts if the employment affects interstate commerce." *CarMax Auto Superstores Cal. LLC v. Hernandez*, 94 F. Supp. 3d 1078, 1100 (C.D. Cal. 2015). The Supreme Court has interpreted "involving commerce" broadly as it applies to the scope of the FAA. *See Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 120-21 (2001). Here, Halliburton presents evidence that its business affects interstate commerce because it operates nationwide as a Delaware corporation with corporate headquarters in Texas, and a facility—out of which Plaintiffs worked—in Bakersfield, California. (Doc. 10-2 at 2, Merritt Decl., ¶ 2) Further, Halliburton is "one of the world's largest providers of products and services for oil and gas exploration, development, and production." (*Id.*) The presumption of FAA applicability, coupled with evidence that Defendants operate nationwide, indicates that the FAA applies to the arbitration policy.

### C. Validity of the Arbitration Agreements

When determining whether a valid and enforceable agreement to arbitrate has been established for the purposes of the FAA, the Court should apply "ordinary state-law principles that govern the formation of contracts to decide whether the parties agreed to arbitrate a certain matter." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Circuit City Stores v. Adams*, 279 F.3d 889, 892 (2002). Here, the parties agree the law of the state of California governs the determination of whether the agreement is valid. (*See generally* Doc. 10-1 at 21-23; Doc. 17 at 3-5, 8-10)

Pursuant to California contract law, the elements for a viable contract are "(1) parties capable of contracting; (2) their consent; (3) a lawful object; and (4) sufficient cause or consideration." *United States ex rel. Oliver v. Parsons Co.*, 195 F.3d 457, 462 (9th Cir. 1999) (citing Cal. Civ. Code § 1550; *Marshall & Co. v. Weisel*, 242 Cal. App. 2d 191, 196 (1966)). The Supreme Court explained, an agreement to arbitrate may be "invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1746 (2011).

Halliburton asserts the arbitration agreement with each plaintiff is valid under general principles of contract law.  (Doc. 10-1 at 7)  According to Halliburton, "[u]pon acceptance of employment with Halliburton, Plaintiffs Dollar, Foster, Brashear, Contreras, and Rodriguez agreed to be bound by the terms of the DRP."  (*Id.* at 9)  Halliburton notes that each plaintiff signed offer letters that indicated they agreed to be bound to the DRP.  (*Id.* at 9-13) On the other hand, Plaintiffs argue they "did not specifically agree to be bound by the DRP Rules or arbitration."  (Doc. 17 at 8, emphasis omitted)

The parties disagree regarding whether the plaintiffs consented to arbitration.  Plaintiffs argue, "This is not a situation in which Plaintiffs signed a document solely about their obligation to arbitration. Nor is it a situation they signed a document acknowledging the rules for arbitration are what is contained in the DPR.  The offer letters Plaintiffs signed do not mention the word arbitration."  (Doc. 17 at 8)

The uncontroverted evidence before the Court undermines Plaintiffs' arguments. The offer letters executed by Foster, Contreras, and Brashear (in 2013) upon acceptance of their positions at Halliburton provided in relevant part:

> **Your acceptance of employment means you also agree to and are bound by the terms of the Halliburton Dispute Resolution Program, effective January 1, 1998**. The Halliburton Dispute Resolution Program binds the employee and the Company to handle workplace problems through a series of measures designed to bring a timely resolution. This will be truth both during your employment and after your employment should you terminate.

(Doc. 10-2 at 38 [Foster], 42 [Brashear], 53 [Contreras]) (emphasis added).  In addition, the offer letters executed in 2017 and 2018 by Brashear, Rodriguez, and Dollar provide in relevant part:

> **Your decision to accept employment constitutes your agreement to resolve all employment related disputes with your employer by arbitration under the Halliburton Dispute Resolution Program ("DRP").**  A copy of the DRP Plan and Rules may be accessed at the Halliburton website at http://www.halliburton.com/ public/pubsdata/related_docs/DRP_Plan_Rules.pdf. Under the DRP, all employment disputes that are not otherwise resolved by mutual agreement must be arbitrated under the DRP rules.  This agreement is binding on both you and the company.  **This agreement constitutes a waiver of your right to a jury trial.**  The arbitrator shall apply the substantive law applicable to the dispute and shall not abridge or enlarge the legal rights, remedies or defenses of the parties.  The decision of the arbitrator shall be final and binding on you and the company and may be confirmed in, and judgment upon the award entered by, any court of competent jurisdiction.  The DRP is herein incorporated by reference.  By signing and returning this letter, you acknowledge that you have reviewed the DRP and agree to its terms.

11

(Doc. 10-2 at 48 [Brashear 2017], 59 [Rodriguez]; Doc. 24 at 7 [Dollar]) (emphasis added) Each plaintiff executed the offer letters containing the above provisions, and expressly agreed to be bound by the DRP. Further, contrary to Plaintiffs' assertions, the offer letters for Brashear, Rodriguez, and Dollar specifically "mention the word arbitration" and waiver of the right to a jury trial.

Significantly, an individual "who signs a written agreement generally is bound by its terms, even though he neither reads it nor considers the legal consequences of signing it." *Operating Engineers Pension Trust v. Gilliam*, 737 F.2d 1501, 1504 (9th Cir. 1984); *see also In re Schwalb*, 347 B.R. 726, 743 (D.Nev. 2006) ("It has long been the common law rule that signing a document authenticates and adopts the words it contains, even if there was a lack of subjective understanding of the words or their legal effect. In essence, people are presumed to be bound by what they sign.") Because each plaintiff executed the offer letters containing the conditions of their employment with Halliburton—including agreement to the DRP—the Court finds Plaintiffs consented to the DRP and arbitration. *See e.g. Morgan Stanley & Co. LLC v. Couch*, 134 F.Supp.3d 1215, 1128 (E.D. Cal. 2015) (finding an employee indicated knowledge of, and consent to, an arbitration agreement where a signed "contract itself called for arbitration of disputes"); *Steiner v. Horizon Moving Systems, Inc.*, 2008 U.S. Dist. LEXIS 110393 *8 (C.D. Cal. Oct. 30, 2008) (concluding a party had "knowledge of the existing right to compel arbitration upon signing the agreement allegedly containing the arbitration provision"). Based upon the evidence presented, the Court finds the plaintiff consented to be bound to the DRP.

It is uncontested that the parties were capable of contracting. Plaintiffs also do not argue there was not a lawful object to the agreement or insufficient consideration. Thus, the Court finds the plaintiffs entered into viable contracts under California law. *See Parsons Co.*, 195 F.3d at 462; *Marshall & Co.*, 242 Cal. App. 2d at 196.

### D.    Enforceability of the Arbitration Agreements

Under California law, an arbitration agreement may only be invalidated for the same reasons as other contracts. Cal. Code Civ. Proc. § 1281. For example, a contract "is unenforceable if it is both procedurally and substantively unconscionable." *Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1072 (9th Cir. 2007)). Procedural unconscionability focuses on "oppression and surprise," while substantive unconscionability focuses upon "overly harsh or one-sided results." *Stirlen v. Supercuts, Inc.*, 51

Cal.App.4th 1519, 1532 (1997) (citations omitted).  Both forms of unconscionability must be present in order for a court to find a contract unenforceable, but it is not necessary that they be present in the same degree.  *Davis*, 485 F.3d at 1072; *Stirlen*, 51 Cal. App. 4th at 1532.  Consequently, "[c]ourts apply a sliding scale: 'the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.'" *Id.* (quoting *Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal. 4th 83, 99 (2000)).

Halliburton notes this Court previously determined Halliburton's DRP was valid and compelled individual arbitration.  (Doc. 10-1 at 7, citing *Guerrero v. Haliburton Energy Servs., Inc*., 2018 WL 3615840 at *6 (E.D. Cal. July 26, 2018))  However, Plaintiffs argue Halliburton "is trying to compel an unconscionable arbitration agreement."  (Doc. 17 at 3)

### 1. Procedural unconscionability

The threshold issue for procedural unconscionability "is whether the subject arbitration clause is part of a contract of adhesion."  *Stirlen*, 51 Cal. App. 4th at 1532; *see also Soltani v. W. & S. Life Ins. Co.*, 258 F.3d 1038, 1042 (9th Cir. 2001).  A contract of adhesion "is a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it."  *Graham v. Scissor-Tail, Inc.*, 28 Cal. 3d 807, 817 (1981).  Accordingly, the Court must examine "the manner in which the contract was negotiated and the circumstances of the parties at that time."  *Kinney v. United Healthcare Services*, 70 Cal. App. 4th 1322, 1327 (1999).

#### a. Surprise

The Ninth Circuit determined "Congress intended there to be at least a knowing agreement to arbitrate employment disputes before an employee may be deemed to have waived the comprehensive statutory rights, remedies and procedural protections prescribed in Title VII and related state statutes." *Prudential Ins. Co. of Am. v. Lai*, 42 F.3d 1299, 1304 (9th Cir. 1994).  As a result, the court later held "[a]ny bargain to waive the right to a judicial forum for civil rights claims… in exchange for employment or continued employment must at the least be express: the choice must be explicitly presented to the employee and the employee must explicitly agree to waive the specific right in question."  *Nelson v. Cyprus Bagdad Copper Corp*., 119 F.3d 756, 762 (9th Cir. 1997).

In *Lai*, the appellants argued they did not make a knowing waiver of their right to arbitrate employment discrimination claims. *Id.*, 42 F.3d at 1302-1303.  The Court noted that each of the appellants executed a form that stated:

> I agree to arbitrate any dispute, claim or controversy that may arise between me or my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or bylaws of the organizations with which I register.

*Id.* at 1302.  As the Court observed, "This provision does not in and of itself bind appellants to arbitrate any particular dispute."  *Id.*  Instead, "[t]see what appellants possibly could have agreed to arbitrate" they had to look at the arbitration requirements the organization with which the appellants registered: the NASD.  *Id.*  The Court reviewed the NASD manual and observed the terms stated it covered "[a]ny dispute, claim or controversy ...  between or among members and/or associated persons . . . arising in connection with the business of such member(s) or in connection with the activities of such associated person(s)."  *Id.*  The court concluded that because the form signed by the appellants "did not purport to describe the types of disputes that were subject to arbitration" and the NASD manual did not put appellants on notice they were bound to arbitrate their employment disputes, they had not made a knowing waiver of their right to statutory remedies.  *Id.* at 1305.

Similarly, in *Nelson*, the plaintiff argued he had not "'knowingly and voluntarily' agreed to waive his right to a judicial forum."  *Id.*, 119 F.3d at 761.  Nelson received a copy of a revised employee Handbook from his employer and signed an acknowledgement form.  *Id.* The Court reviewed the acknowledgment form and the Handbook and found nothing in either document "put Nelson on notice that . . . he was somehow entering into an agreement to waive a specific statutory remedy afforded him by a civil right statute."  *Id.* at 762.  Because the plaintiff choice was not "explicitly" informed that by continuing his employment he was waiving his rights, the Court found he "did knowingly waive his statutory rights to a judicial forum."  *Id.* at 762-63.

In contrast, here, Halliburton notified Plaintiffs prior to their acceptance of the offered positions that Halliburton had an employment dispute resolution program.  None of the plaintiffs assert they were unaware of the arbitration provision in their offer letters.  (*See generally* Docs. 17-2, 17-3, 17-4, 17-5, 17-6)  Once employees of Halliburton, Plaintiffs could access the DRP from the company's intranet homepage, and the "website provides a detailed explanation of the DRP as well as

14

printable PDF version of the DRP Plan and Rules." (Doc. 10-3 at 2, Miner Decl. ¶ 5) Though "Plaintiffs contend the arbitration agreement itself is so long and detailed, with the likelihood no Plaintiff would read nor comprehend it" (Doc. 17 at 4), this assertion is not supported by any evidence. Plaintiffs do not assert they did not read the DRP or Rules or failed to understand the terms despite the length of the document. (*See generally* Docs. 17-2, 17-3, 17-4, 17-5, 17-6) Plaintiffs do not report an inability to determine the disputes subject to the DRP based upon the information provided by Halliburton regarding the DRP and its terms.[2]  Consequently, Plaintiffs fail to establish any surprise regarding the arbitration provisions and DRP.

### b. Oppression

In evaluating the process in which the parties entered into an arbitration agreement, the Court considers whether the contract was "imposed on employees as a condition of employment." *Soltani*, 258 F.3d at 1042. In general, under California law, it is "procedurally unconscionable to require employees, as a condition of employment, to waive their right to seek redress of grievance in a judicial forum." *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003); *see, e.g., Armendariz*, 24 Cal.4th at 113 (explaining an arbitration agreement was procedurally unconscionable because it was imposed on employees as a condition of employment, and there was no opportunity for them to negotiate); *Aral v. Earthlink, Inc.*, 134 Cal.App.4th 544, 557 (2005) (an arbitration clause on a "take it or leave it" basis demonstrates "quintessential procedural unconscionability"); *Martinez v. Master Protection Corp.*, 118 Cal. App. 4th 107 (2004) (finding an arbitration agreement procedurally unconscionable because it was a prerequisite of employment and the employee did not have an "opportunity to negotiate or refuse to sign the arbitration agreement"); *Flores v. Transamerica HomeFirst, Inc.*, 93 Cal. App. 4th 846, 853 (Ct. App. 2001) ("A finding of a contract of adhesion is essentially a finding of procedural unconscionability").

As discussed above, Halliburton's offer letters informed Plaintiffs that acceptance of employment constituted their agreement to be bound by the DRP and arbitration of claims. (*See* Doc. 10-2 at 38 [Foster], 42 [Brashear], 48 [Brashear 2017], 53 [Contreras], 59 [Rodriguez]; Doc. 24 at 7

---

[2] Notably, Halliburton mailed "an explanatory cover letter, a copy of the "Road to Resolution Brochure", and a copy of the DRP Plan and Rules" to Foster, Brashear, Contreras, and Rodriguez throughout their employment. (Doc. 10-3 at 3, Miner Decl. ¶¶ 7-10)

[Dollar])  Thus, Halliburton offered Plaintiffs the choice to either accept the arbitration agreement or seek employment elsewhere, and the company was in a stronger bargaining position than Plaintiffs. *See Armendariz*, 24 Cal. 4th at 115 (explaining "the economic pressure exerted by employers on all but the most sought-after employees may be particularly acute, for the arbitration agreement stands between the employee and necessary employment, and few employees are in a position to refuse a job because of an arbitration agreement").  Because the agreements to submit to the DRP were offered on a "take it or leave it" basis, this factor supports a conclusion that the agreement was procedurally unconscionable. *Circuit City Stores, Inc. v. Adams,* 279 F.3d 889, 893 (9th Cir. 2002).

2.      Substantive unconscionability

"Substantive unconscionability addresses the fairness of the term in dispute."  *Szetela v. Discover Bank*, 97 Cal. App. 4th 1094, 1100 (Ct. App. 2002). While "parties are free to contract for asymmetrical remedies and arbitration clauses of varying scope," substantive unconscionability "limits the extent to which a stronger party may, through a contract of adhesion, impose the arbitration forum on the weaker party without accepting the forum for itself."  *Ting v. AT&T*, 319 F.3d 1126, 1149 (9th Cir. 2003) (quoting *Armendariz*, 24 Cal. 4th at 118).  Thus, the focus of the Court's inquiry is whether an agreement is one-sided and will have an overly harsh effect on the party not given an opportunity to negotiate its terms.  *Flores*, 93 Cal. App. 4th at 854.  The Ninth Circuit instructs courts applying California law to arbitration agreements "look beyond facial neutrality and examine the actual effects of the challenged provision."  *Ting*, 319 F.3d at 1149.

In evaluating the substantive fairness of an arbitration agreement, the Court may consider various terms of the arbitration agreement, including which claims are subject to arbitration, any statute of limitations imposed, class action, fee and cost-splitting arrangements, remedies available, and modification of the agreement. *See Ingle*, 328 F.3d at 1180; *see also Sinclare v. Servicemaster Co.*, 2007 WL 3407138  (E.D. Cal. Nov. 14, 2007) ("factors that may indicate unconscionability include a forum selection clause of the employer's choice and preventing full recovery of damages by employees, while placing no such restriction on employers")  Here, Plaintiffs argue the arbitration agreement is unconscionable because "Defendant has manipulated together many, many terms that it views as most advantageous to itself."  (Doc. 17 at 5)  Specifically, Plaintiffs assert the arbitration agreement was

unconscionable because: (1) it requires claims be individually arbitrated, (2) Halliburton may unilaterally amend the DRP and its rules, (3) Halliburton that arbitration occur in Los Angeles, and (4) there is "ambiguity on discovery rights because the arbitrator has complete discretion as to discovery." (*Id.* at 5-7, 10)

### a.      Claims subject to arbitration

An arbitration agreement that "compels arbitration of the claims employees are most likely to bring against [the employer] but exempts from arbitration the claims [the employer] is most likely to bring against its employees" is substantively unconscionable.  *Ferguson v. Countrywide Credit Indus.*, 298 F.3d 778, 785 (2002) (quoting *Mercuro v. Superior Court*, 96 Cal. App. 4th 167, 175-76 (Ct. App. 2002).  For example, in *Ferguson* and *Mercuro*,[3] the courts found Countrywide's arbitration agreement was substantively unconscionable, because it excluded claims "for intellectual property violations, unfair competition and/or the use and/or unauthorized disclosure of trade secrets or confidential information." *Ferguson*, 298 F.3d at 785 *Mercuro*, 96 Cal. App. 4th at 176.

Halliburton's Program encompasses claims arising out of "current, former, or potential employment" with Halliburton.  (Doc. 10-2 at 50)  Specifically, the "Plan and Rules" explain disputes encompassed with the Program include:

> [A]ll legal or equitable claims, demands, and controversies, of whatever nature or kind, whether in contract, tort, under statute or regulation, or some other law, between persons bound by the Plan . . . including, but not limited to, any matters with respect to:
>
> 1.   [The] Plan;
>
> 2.   The employment or potential re-employment of an Employee, including the terms, conditions, or termination of such employment with the Company;
>
> 3.   Employee benefits or incidents of employment with the Company;
>
> 4.   Any other matter related to the relationship between the Employee and the Company including, by way of example and without limitation, allegations of discrimination based on race, sex, religion, national origin, age, veteran status or disability; sexual or other kinds of harassment; wrongful discharge; workers' compensation retaliation; defamation; infliction of emotional distress; or status, claim, or membership with regard to any employment benefit plan;
>
> 5.   An Applicant's application for employment and the Company's actions and

---

[3] Both cases involved the arbitration agreement of Countrywide Credit Industries.  *See Ferguson*, 298 at 784 ("During oral argument, counsel for Countrywide conceded that the provisions of the arbitration agreement in the present case are the same as the provisions of the arbitration agreement at issue in *Mercuro*").

decisions regarding such application;

6. Any prior resolution or settlement of a Dispute between Parties subject to the Plan; and

7. Any personal injury or death allegedly incurred in or about a Company workplace or on Company time.

(Doc. 10-3 at 8-9, §2(E))  However, the dispute resolution program "does not apply to claims for worker's compensation benefits or unemployment compensation benefits." (*Id.* at 10)

Significantly, unlike in *Armendariz*, the Plan does not exempt Halliburton from arbitrating disputes it has with the employee.  Rather, the Plan notes that "all" disputes "between the persons bound by the Plan" are subject to arbitration.  (Doc. 10-3 at 8) Thus, the Court does not conclude that Defendant has reserved for itself the ability to seek judicial intervention as to claims brought by it against employees while requiring the employees to arbitrate claims against Halliburton.

### i. Injunctions

Under the Program provisions, "[a]ny court with jurisdiction over the Parties may issue any injunctive orders (including preliminary injunctions) if the necessary legal and equitable requirements under applicable law are met pending the institution of proceedings…" (Doc. 10-3 at 10-11, § 3(G)) There is nothing that precludes a party —whether a prospective employee, current employee, or former employee—from seeking an injunction against Halliburton.   Consequently, this provision is not substantively unconscionable.

### ii. Representative claims

In *Wulfe* the Ninth Circuit indicated "pre-dispute agreements to waive the right to bring a representative PAGA claim are unenforceable and that this rule is not preempted by the FAA." *Id.*, 2016 U.S. App. LEXIS 3781 at *3 (citing *Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425 (9th Cir. 2015)).  However, Plaintiffs not seek to bring a *representative* action, and this provision is not relevant to the matter before the Court.  Further, Halliburton specifically seeks to compel arbitration only of the "non-PAGA claims." (*See* Doc. 10-1 at 8, n.1) Accordingly, the provision limiting parties from bringing representative actions may be severed from the agreement.  *See, e.g., Grabowski v. C.H. Robinson Co.*, 817 F. Supp. 2d 1159 (S.D. Cal. 2011) (finding three substantively unconscionable provisions could be severed from an arbitration agreement which was not "permeated by

1   unconscionability," thus rendering the agreement enforceable); *Stacy v. Brinker Rest. Corp.*, 2012 U.S.

2   Dist. LEXIS 150345, at * 31-32 (E.D. Cal. Oct. 18. 2012) (explaining the substantively unconscionable

3   provision could be severed because it was "collateral to the Agreement and does not permeate the

4   Agreement with unconscionability").

5                                              *iii.*      *Individual claim requirement*

6           Plaintiffs contend the requirement that they pursue individual arbitration renders the DRP

7   substantively unconscionable.  (Doc. 17 at 5)  Plaintiffs argue this creates "burden and unfair

8   advantages," including multiplying the costs for serving subpoenas, holding multiple depositions for

9   "the same managers and present employees," and ordering transcript fees.  (*Id.*)  Plaintiffs report they

10  will be required "to miss work each time a Plaintiff has an arbitration" so they can "testify in the

11  arbitration of their co-Plaintiff."  (*Id.*)

12          Significantly, though Plaintiffs speculate as to the increased costs and inconvenience, similar

13  costs would be borne by Plaintiffs if they were pursuing individual litigation.  The Court declines to

14  join in speculating as to the course of discovery the parties may take in arbitration proceedings, and

15  whether deposition testimony from one plaintiff may be taken multiple times or could be used in a

16  related action.  Moreover, this Court previously observed that "an arbitration agreement in which an

17  employee agrees to arbitrate claims against an employer on an individual − rather than on a class or

18  collective − basis, is enforceable."  *Guerrero v. Halliburton Energy Services, Inc.*, 2018 WL 3615840

19  at *5 (citing *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612 (2018)).  Thus, the Court finds provision

20  does not render the DRP substantively unconscionable.

21                                             *iv.*      *Conclusion*

22          As noted above, the claims subject to arbitration include claims by employees *or* Halliburton.

23  Defendants have not excluded claims the companies may bring against employees from the arbitration

24  agreement.  The totality of the claims subject to arbitration does not appear unconscionable.  *See*

25  *Ferguson*, 298 F.3d at 784, n.6 (explaining substantive unconscionability may be demonstrated when

26  an employer seeks to enforce "what is essentially a unilateral arbitration agreement" because the

27  company excludes claims it may bring against the employee from the agreement).

28  ///

b.     *Filing fees and cost arrangement*

When arbitration is a condition of employment, an employer "cannot generally require the employee to bear any *type* of expense that the employee would not be required to bear . . . in court." *Armendariz*, 24 Cal. 4th at 110 (emphasis in original).  A scheme that makes each party bear half the costs of the arbitration "alone would render an arbitration agreement unenforceable."  *Circuit City v. Adams*, 279 F.3d 889, 894 (9th Cir. 2002).  For example, the Ninth Circuit found a cost-splitting provision substantively unconscionable when the agreement forced the plaintiffs to pay the filing fee up to a maximum of $125.00 and share costs equally after the first day of arbitration.  *Ferguson*, 298 F.3d at 781*; see also Ingle*, 328 F.3d at 1177-78 (finding a provision substantively unconscionable that stated "each party shall pay one-half of the costs of arbitration following the issuance of the arbitration award").

Halliburton's program requires an employee initiating the arbitration to pay a fee of $50, but "[i]f the demand for mediation or arbitration is initiated by [Halliburton], such fees will be paid by the Company."  (Doc. 10-3 at 25-26, Resolution Rules § 31(E),(F))  Beyond this filing fee, "Employee/ Applicant Parties shall not be responsible for payment of fees and expenses of proceedings . . ." (*Id.*)  Thus, the provisions governing the initiation fee and costs do not require employees to incur any type of costs they would otherwise avoid in court, and the fee/cost arrangement under the DRP is not substantively unconscionable.

c.     *Forum selection*

Karl Gerber, Plaintiffs' counsel, reports, "In meet and confer discussions about agreeing to arbitrate," Halliburton requested that "[t]he arbitration hearing be in Los Angeles." (Doc. 17-1 at 2, Gerber Decl. ¶ 3)  Plaintiffs contend this forum selection supports a finding that the agreement is unconscionable because "[t]he case has no connection to Los Angeles."  (Doc. 17 at 7)  Plaintiffs note they reside in Bakersfield and Shafter, and "[m]ost of their work was in Kern County."  (*Id.*)  Thus, Plaintiffs conclude arbitration in Los Angeles would thus not only be an inconvenience to them, but also to all witnesses for Plaintiffs.  (*Id.*)

A provision that requires the arbitration to occur in a location inconvenient to the plaintiffs may be substantively unconscionable.  A forum selection clause requiring arbitration in a distant forum is

unconscionable where it imposes significant hardships on the weaker party and has "no justification other than as a means of maximizing an advantage." *Bolter v. Superior Court*, 87 Cal. App. 4th 900, 910 (2001); *see also Nagrampa v. Mailcoups, Inc.,* 469 F.3d 1257, 1289 (9th Cir. 2006) (finding a provision designating Boston as the arbitral forum was unconscionable under California law because it required arbitration "only a few miles from [the employer's] headquarters, but three thousand miles away from Nagrampa's home); *Pinedo v. Premium Tobacco Stores, Inc*., 85 Cal. App. 4th 774, 781 (2000) (a provision requiring a Los Angeles plaintiff to arbitrate in Oakland was a factor showing unconscionability of the agreement). Thus, courts have consistently determined clauses setting the venue in a location inconvenient to an employee are substantively unconscionable.

There is no specific forum identified in the arbitration agreement at issue. Though Halliburton may have expressed a desire for the arbitration to occur in Los Angeles when discussing the issue with Plaintiff's counsel, this venue is not specified in the DRP.  The DRP provides that "[t]he arbitrator shall set the date, time, and place of any proceeding" and "[t]he arbitrator may consider, short of imposing undue expense on the Company, *accommodation of the Employee or Applicant* in the selection of a proceeding location."  (Doc. 10-2 at 18, § 7) (emphasis added)  In addition, "discretion of the arbitrator or by agreement of the Parties, conferences and hearings may be conducted by telephone or by written submission, as well as in person."  (*Id.* at 19, § 9)  Because arbitrators are instructed to consider a location that accommodates the employees or applicants who have a dispute with Halliburton, this forum provision favors Plaintiffs and is not substantively unconscionable.

### d.    Discovery

California law requires that an arbitration agreement "provide for adequate discovery." *Armendariz*, 24 Cal. 4th 83 at 122. Notably, in *Armendariz*, the court observed that parties are "permitted to agree to something *less than* the full panoply of discovery provided in Code of Civil Procedure section 1283.05." *Id.* at 106 (emphasis added).

Under the terms of the DRP, the arbitrator has the "discretion to determine the form, amount and frequency of discovery by the Parties." (Doc. 10-3 at 19, § 10) In addition, "Discovery may take any form permitted by the Federal Rules of Civil Procedure, as amended from time to time, subject to any restrictions imposed by the arbitrator.  (Doc. 10-3 at 19-20, § 10)  Despite Plaintiffs' concern

regarding "ambiguity on discovery rights," there is no reason to believe the arbitrator will act unreasonably or unlawfully related to their discovery efforts.  Further, there is no evidence that the DRP fails to "provide for adequate discovery."  *See Armendariz*, 24 Cal. 4th 83 at 122.  Therefore, the discovery provision of the arbitration agreement is not substantively unconscionable.

### e.   Remedies

Remedy provisions that "fail[] to provide for all the types of relief that would otherwise be available in court" by limiting an employee's total and punitive damages are substantively unconscionable.  *Adams*, 279 F.3d at 895 (citing *Cole v. Burns Int'l Sec. Servs.,* 105 F.3d 1465, 1482 (9th Cir. 1997)).  The DRP provides the arbitrator has "the authority to determine the applicable law and to order any and all relief, legal or equitable, including punitive damages, which a Party could obtain from a court of competent jurisdiction on the basis of the claims made in the proceedings." (Doc. 10-3 at 14, § 8(B))  Therefore, the DRP does not improperly limit available remedies, and the provision is not substantively unconscionable.

### f.   Unilateral amendment and termination

When provisions of an arbitration agreement permit an employer to unilaterally amend or terminate the agreement, even with written notice to employees, the provision is substantively unconscionable.  *See, e.g., Ingle*, 328 F.3d at 1179; *Ramirez-Baker v. Beazer Homes, Inc.*, 636 F. Supp. 2d 1008, 1021-22 (E.D. Cal. 2008).  The Ninth Circuit explained a provision granting an employer unilateral power to amend or terminate an arbitration agreement, even with written notice to employees, proscribes an employee's ability negotiate and "embeds its adhesiveness."  *Ingle*, 328 F.3d at 1179.

The DRP provides amendment or termination of the agreement may occur by Halliburton "at any time by giving at least 30 days' notice to current Employees."  (Doc. 10-4 at 12-13, §§ 6-7)  No amendments would apply to a dispute "which arises prior to the effective date of the amendment." (*Id.*) Therefore, Halliburton's ability to avoid pending claims by amendment is limited.  Nevertheless, Halliburton maintains the right to amend or terminate the Program, and "the arbitration agreement affords no such power to employees."  *See Ingle*, 328 F.3d at 1179.  Consequently, the provision is substantively unconscionable.

///

22

g.      *Agreement as a whole*

California law provides: "If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result."  Cal. Civ. Code § 1670.5(a).  Refusing to enforce an arbitration agreement is appropriate "only when an agreement is permeated by unconscionability."  *Armendariz*, 24 Cal.4th 83 at 122 (internal quotation marks omitted).  Courts often look to whether the offending provisions "indicate a systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage." *Id.* at 124; *see also Ferguson*, 298 F.3d at 787-88.  For example, the Ninth Circuit found an arbitration agreement was "permeated by unconscionable clauses" where there was a "lack of mutuality regarding the type of claims that must be arbitrated, the fee provision, and the discovery provision."  *Ferguson*, 298 F.3d at 788.

The only provisions of the Program appearing substantively unconscionable are those granting unilateral amendment and termination of the dispute resolution program.  However, the DRP provisions are not permeated by unconscionability and do not establish an inferior forum that works to Halliburton's advantage.  *See Armendariz*, 24 Cal. 4th 83 at 122.  Significantly, it does not appear the provisions regarding amendment and termination are relevant to Plaintiff's claims and may be severed from the agreement.  *See, e.g., Grabowski*, 817 F. Supp. 2d 1159; *Stacy*, 2012 U.S. Dist. LEXIS 150345, at * 31-32.  Accordingly, the provisions governing amendment and termination may be severed, and the arbitration agreement enforced because the terms, taken as a whole, do not appear substantively unconscionable.

**C.      The arbitration agreement encompasses the disputes at issue.**

To determine whether an arbitration agreement encompasses particular claims, the Court looks to the plain language of the agreement, and "[i]n the absence of any express provision excluding a particular grievance from arbitration . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail."  *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 584-86 (1960).

Significantly, the Supreme Court explained, "Parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy. *Rent-A-Center, W., Inc. v. Jackson*, 130 S. Ct. 2772, 2779-80 (2010). Here, under the terms of the Program, the parties agreed to arbitrate any dispute related to the DRP— which includes disputes relating to the enforcement or interpretation of its provisions—and "disputes related to "the terms, conditions, or termination of such employment," including failure to pay pages. (Doc. 10-3 at 8, §2(E)). Based upon these broad specifications, it is clear that the alleged violations of wage and hour laws are encompassed within the arbitration agreement.

## V.      Findings and Recommendations

Plaintiffs and Halliburton entered into valid arbitration agreements, and the DRP encompasses the issues in dispute. As a result, "there is a presumption of arbitrability" and Halliburton's motion to compel arbitration should not be denied. *See AT&T Tech., Inc.*, 475 U.S. at 650. Furthermore, because Plaintiffs' complaint includes PAGA claims, the Court finds a stay of the proceedings while arbitration is pending is appropriate. *See* 9 U.S.C. §§ 3, 4; *see also Delgadillo v. James McKaone Enters. Inc.*, 2012 WL 4027019 at *3 (E.D. Cal. Sept. 12, 2012) (if the court "determines that an arbitration clause is enforceable, it has the discretion to either stay the case pending arbitration, or to dismiss the case if all of the alleged claims are subject to arbitration"). Based upon the foregoing, the Court **RECOMMENDS**:

1.      The clauses governing amendment and termination be severed from the DRP plan;

2.      Halliburton's motion to compel arbitration be **GRANTED**;

3.      The matter be **STAYED** to allow the completion of the arbitration;

4.      Within 120 days and every 120 days thereafter, counsel **SHALL** file a joint status report.  In addition, within 10 days of the determination by the arbitrator, counsel **SHALL** file a joint status report; and

5.      The Court retain jurisdiction to confirm the arbitration award and enter judgment for the purpose of enforcement.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local

Rules of Practice for the United States District Court, Eastern District of California.  Within 14 days after being served with these Findings and Recommendations, any party may file written objections with the Court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991); *Wilkerson v. Wheeler*, 772 F.3d 834, 834 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:   **August 10, 2020**                    **/s/ Jennifer L. Thurston**
                                                    UNITED STATES MAGISTRATE JUDGE

25