**SEYFARTH SHAW LLP**
Jon D. Meer (SBN 144389)
jmeer@seyfarth.com
2029 Century Park East, Suite 3500
Los Angeles, California 90067-3021
Telephone: (310) 277-7200
Facsimile: (310) 201-5219

Annette A. Idalski (pro hac vice)
aidalski@seyfarth.com
1075 Peachtree Street, N.E., Suite 2500
Atlanta, Georgia 30309-3958
Telephone: (404) 885-1500
Facsimile: (404) 892-7056

*Counsel for Defendant Halliburton Energy Services, Inc.*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL BRASHEAR, BENITO CONTRERAS, KENNETH DOLLAR, TERRY FOSTER, RICARDO RODRIGUEZ,<br><br>            Plaintiffs,<br><br>      v.<br><br>HALLIBURTON ENERGY SERVICES., DOES 1-100,<br><br>           Defendant. | Case No. 1:20-cv-00505-JLT<br><br>**DECLARATION OF ANNETTE A. IDALSKI, ESQ. IN SUPPORT OF MOTION TO CONFIRM FINAL ARBITRATION AWARD AND FOR ENTRY OF JUDGMENT** |

I, Annette Idalski, pursuant to 28 U.S.C. § 1746, hereby affirm that I am over 18 years of age and am competent to make the following Declaration.

1.    I make this declaration of my own personal knowledge, and I authorize the use of this Declaration for all purposes allowed by law.

2.    I am a partner in the Atlanta and Houston offices of Seyfarth.  I am admitted in this case *pro hac vice* and serve as legal counsel to Defendant Halliburton Energy Services, Inc.

3.     Attached hereto as Exhibit 1 is a true and accurate copy of the Memorandum and Order on Halliburton's Motion for Summary Judgment or Adjudication in the arbitration styled *Ricardo Marin Rodriguez v. Halliburton Energy Services, Inc.*, AAA Case No. 01-02-0016-0512.

4.     Attached hereto as Exhibit 2 is a true and accurate copy of the Demand for Arbitration filed by Plaintiff Rodriguez with the American Arbitration Association.

I declare under penalty of perjury that the foregoing is true and correct.

DATED: July 28, 2022

By:   */s/ Annette A. Idalski*
ANNETTE A. IDALSKI

# EXHIBIT 1

Hon. Frank J. Ochoa (Ret.)
Arbitrator
American Arbitration Association
222 East Carrillo St., Suite 300
Santa Barbara, CA 93101
Cell: (805) 451-1240
Office: (805) 962-4887
Fax: (805) 963-7311
Email: judgefrankochoa@gmail.com

AMERICAN ARBITRATION ASSOCIATION

EMPLOYMENT ARBITRATION TRIBUNAL

| | |
|---|---|
| RICARDO MARIN RODRIGUEZ, <br><br> CLAIMANT, <br><br> vs. <br><br> HALLIBURTON ENERGY SERVICES, INC. <br><br> RESPONDENT. | Case No. . 01-20-0016-0512 <br><br> MEMORANDUM AND ORDER ON HALLIBURTON'S MOTION FOR SUMMARY JUDGMENT OR ADJUDICATION |

In this arbitration Claimant is represented by Karl Gerber, Esq. of the Employment

Lawyers Group; and Respondent is represented by Annette Idalski, Esq., Kyle Winnick, Esq.,

and Raed "Ray" Abilmouna, Esq., of Seyfarth Shaw LLP. Claimant RICARDO MARIN

RODRIGUEZ (Claimant) seeks relief against his employer, HALLIBURTON ENERGY

SERVICES, INC. (Halliburton), under California substantive law for violations of meal and rest

break rules (Wage Order 16, 8 Cal. Code Regs. (CCR) § 11160(10) [drilling industry wages,

hours, conditions]); for violation of on-call, reporting time, minimum wage, and overtime rules;

for reimbursement for cell phone expenses (Labor Code, § 2802); and on other theories deriving

from the foregoing fundamental claims. In deposition, Claimant testified that there are only two

MEMORANDUM AND ORDER ON MOTION FOR SUMMARY JUDGMENT OR ADJUDICATION- 1

reasons he is suing Halliburton: (1) he was not paid when he was on-call; and (2) he was forced to write down meal breaks when he did not take them. SUMF 1.

## THE MOTION FOR SUMMARY JUDGMENT OR ADJUDICATION

Halliburton moves for summary judgment or adjudication on the following grounds:

Claim One: Claimant's minimum wage claim fails as a matter of law because the time that Claimant spent on call was not compensable controlled standby time and he was otherwise properly paid for all hours worked.

Claim Two: Claimant's overtime claim fails as a matter of law because the time that Claimant spent on call was not compensable controlled standby time, his meal per diem was properly excluded from his regular rate of pay, and he was otherwise paid for all hours worked.

Claim Three: Claimant's controlled standby claim fails as a matter of law because the time that Claimant spent on call was not compensable controlled standby time. Claimant's reporting-time pay claim fails as a matter of law because no evidence supports this claim.

Claim Four: Claimant's *quantum meruit* claim fails because it is derivative of his failed on-call claim.

Claim Five: Claimant's inaccurate wage statements claim fails as a matter of law because Claimant's wage statements accurately reflected all time worked and otherwise contained all information required by law.

Claim Six: Claimant's claim for reimbursement of employee expenses fails as a matter of law because Claimant was not required to use his cell phone and no evidence otherwise supports this claim.

Claim Seven: Claimant's claim for penalties under Cal. Lab. Code § 558 fails because Claimant was paid all wages due.

Claim Eight: Claimant's meal break claim fails because it is preempted by the hours of service regulations promulgated by the Federal Motor Carrier Safety Administration. Claimant is estopped from claiming that he worked through meal breaks he did not write on his time sheets. Claimant also has no damages because he committed time fraud by padding his hours worked.

Claim Nine: Claimant's rest break claim fails because it is preempted by the hours of service regulations promulgated by the Federal Motor Carrier Safety Administration. Claimant is only estopped from claiming that he worked through rest breaks he did not write on his time sheets. Claimant also has no damages because he committed time fraud by padding his hours worked.

Claim Ten: Claimant's claim under California Business and Professions Code § 17200 fails as a matter of law because Claimant does not have a valid underlying claim.

## FACTUAL BACKGROUND

Halliburton is "one of the world's largest providers of products and services for oil and gas exploration, development, and production." *Brasher, et al v Halliburton Energy Services, Inc.* Case No 1:20-cv-0505 at 10.

Claimant drove DOT regulated semi-trucks for Halliburton Energy Services, Inc., carrying equipment, some of which weighed up to 80,000 pounds. SUMF 7-8.

After a 2015 layoff, Halliburton re-hired Claimant in 2017. Opp SUMF 1; SUMF 2. His claims relate to post-2017 employment.

Claimant worked in Halliburton's wireline department from May 2017 to November 2017, then as a service operator I in the cement department, until he was promoted in February 2019 to service operator II. SUMF 3. He testified that each of these positions was a DOT [U.S. Department of Transportation regulated] position requiring a commercial driver's license, and that he was subject to DOT hours of service (HOS) requirements. SUMF 5-6. Claimant kept DOT hours logs. SUMF 10.

Claimant was paid hourly, with overtime at time-and-a-half for work over 8 hours in a day, or 40 hours in a workweek, and double-time for work over 12 hours in a day. SUMF 4.

***On-Call/Reporting/Off the Clock Time***

The Arbitrator has reviewed the extensive and detailed submissions of the parties as well as the post-hearing letter briefs. A summary of the essential facts follows.

Claimant was generally on-call 6 days at a time, followed by 3-day breaks. There was also, he testified, a period when he was on-call for 11 days, with 2-day breaks. SUMF ¶ 17. On-call periods were 24 hours.

MEMORANDUM AND ORDER ON MOTION FOR SUMMARY JUDGMENT OR ADJUDICATION- 4

When a Halliburton customer needed a crew, Halliburton would call in a crew for work. SUMF ¶ 16.  When Claimant was called, he was expected to return the call and to arrive on site (to the "shop") within an hour.  SUMF ¶ 26.  If he did not call back within one hour, he was placed "out of pocket." SUMF ¶ 26. Sometimes, he called the supervisor to see whether he was likely to be needed.

There were times when he was called in only 2 of the 6 on-call days. SUMF ¶18. Most of his work consisted of unplanned call-outs, because most Halliburton customers did not plan ahead.  Claimant typically had less than six- to eight-hours' notice.  SUMF ¶ 25.

Claimant testified that when he was on-call, he did "anything that is within 30 minutes of [his] home. . . " SUMF ¶ 20. He spent time with his family, slept at home, went out to eat with his family, did chores and yard work, watched television, visited family, and took his children to the park. SUMF ¶ 19-20.  He declares that he did not schedule any appointments for on-call periods, such as haircuts for his children.

Claimant states that after he was called, and while he was still at home off-the-clock, he reviewed call sheets, read packets about the particular job, and sometimes contacted a coordinator to determine if the truck was ready and loaded. He also states that while he was off the clock, he sometimes responded to text messages and phone calls from Halliburton's employees, and he completed time sheets while off the clock.  Opp SUMF ¶¶275-276, 262, 289, 16, 29-30.

When Claimant arrived at a job location, he sometimes waited before the customer needed his crew.  SUMF ¶ 32. While waiting, he was free to eat, rest, or use his cellphone to browse the internet. ¶ 32.  A typical day would include 12 hours of waiting time. ¶ 34. Sometimes he performed work at the shop.

MEMORANDUM AND ORDER ON MOTION FOR SUMMARY JUDGMENT OR ADJUDICATION- 5

*Meal and Rest Breaks*

The cement department policy was to require a 30-minute meal break every 5 hours of work. SUMF ¶ 36. Its policy provided that an employee "shall not be impeded or discouraged from doing so." ¶ 46. Halliburton also provided a paid 10-minute break per four-hours worked, and provided that meal breaks are not to be substituted. SUMF ¶ 47. Claimant testified he did not follow the meal break requirement, and did not "ask for permission" to skip meal breaks. ¶ 38-40. He said he was trained to pad his hours if he missed a meal or rest breaks, and that is what he did. He was thus paid for the time. ¶ 51.

Claimant declares in opposition to this motion that, among other things, when he worked at the shop, he could not leave during his breaks; when he was driving with a crew, a supervisor decided when he would pull over for a break; and when he was on a job site and his truck had a radioactive source, he had to stay with the truck during breaks to monitor it. Dec. of Rodriguez, ¶¶ 4-6

*Padding*

Claimant certified the accuracy of his timesheets by signature; but, he testified he did not actually work all the time listed on his time sheet. ¶SUMF 49. He said, "a lot of times we charge more time than we actually worked." Ibid. He testified that his supervisor clocked in for him before he arrived. ¶SUMF ¶ 50. He testified it has been that way since he worked for Halliburton, and he benefitted from it, and he did not report it. ¶SUMF 50. In his declaration, Claimant backed away from this testimony and also seemed to expand his claims. Halliburton moves to strike Claimant's declaration on the ground that it contradicts his deposition testimony.

MEMORANDUM AND ORDER ON MOTION FOR SUMMARY JUDGMENT OR ADJUDICATION- 6

The Arbitrator denies the motion to strike, but considers the declaration only to the extent that it does not directly contradict Claimant's deposition testimony. (*Kennedy v. Allied Mut. Ins. Co.* 952 F.2d 262, 266 (9th Cir. 1991) [party cannot create issue of fact by affidavit contradicting their own deposition testimony].)

## LEGAL BACKGROUND

The parties are contractually bound to follow the Halliburton Dispute Resolution Process (DRP). Pursuant to the DRP, the Arbitrator applies substantive federal or state law as would a federal district judge located in California. (Scheduling Order, ¶ 1; Halliburton's Dispute Resolution Process (DRP).) The Federal Rules of Civil Procedure apply to the extent consistent with the DRP. *Id.*

Summary judgment is available in federal court where the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Proc. 56(a). The moving party may meet this burden by demonstrating an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). The non-moving party may defeat the motion by demonstrating that there are material issues of disputed fact. All inferences are drawn in the light most favorable to the nonmoving party and the tribunal does not weigh evidence. *Soremekun v. Thrifty Payless, Inc.,* 509 F.3d 978, 984 (9th Cir. 2007). But conclusory, speculative testimony in affidavits and moving papers is insufficient. *Ibid.* The non-moving party must show more than "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).)

The Labor Code and wage orders are liberally construed to favor protection of employees. *Troester v. Starbucks,* 5 Cal.5th 829, 842 (2018).

## ANALYSIS

### 1. **MEAL AND REST BREAKS**

In general, California Wage Order 16 requires employers in the drilling industry to provide: meal breaks of 30 minutes to any non-exempt employee who works more than five hours; a second meal break if the employee works more than 10 hours per day; and a 10-minute rest break for every four hours worked. 8 CCR § 11160 [drilling industry wage, hour, & conditions], subds. (10) [meal periods] & (11) [rest breaks].

By contrast, the DOT Federal Motor Carrier Safety Administration (FMCSA) hours of service (HOS) rules require a 30-minute driving break for each 8 cumulative driving hours. SUMF 14. Claimant testified he was able to take breaks within the DOT requirements. ¶SUMF ¶ 47.

Claimant's claims are based instead on California meal and rest break rules. *Ca. Labor Code* §§ 226.7 & 512 [penalties for missed meal breaks]; *Brinker v. Superior Court,* 53 Cal.4th 1004, 1040.

### a. *Preemption*

"[F]ederal law preempts California's meal and rest break rules . . . as applied to drivers of property-carrying commercial motor vehicles who are subject to the FMSCA's own rest break regulations." *Int'l Bhd. Of Teamsters, Loc. 2785 v. Fed. Motor Carrier Safety Admin.,* 986 F.3d

841, 845 (9th Cir. 2021). As applied to such drivers, they can "not be enforced under 49 U.S.C. §

31141(c)." *Id.* at p. 848. Halliburton is a FMSCA licensed motor carrier. SUMF ¶15.

Claimant admitted in deposition that he is subject to FMCSA's HOS rules. SUMF ¶ 9

("you're subject to the DOT's hours of service requirements . . . including rest breaks; right? A:

Yes"; "Q: [At all times when you were an operator within the wireline department and then the

cement department, you were subject to the DOT's hours of service requirement, correct? A:

Yes.") . Moreover, Claimant testified that he drove DOT regulated semi-trucks, some weighed

up to 80,000 pounds, he needed a commercial driver's license for his job, and he kept track of his

hours of service on DOT logs. SUMF ¶¶ 5-10. He agreed that he was "on duty" for purposes of

logging his hours even when he was not driving. SUMF ¶ 12

Claimant offers evidence that he was trained to skip meal and rest breaks as provided for

under California law, and to pad his time to cover the missed break periods. This could be a

violation of California law if California law controlled his claim. But Halliburton has

established that federal DOT meal and rest break rules control, and Claimant testified that he was

able to take breaks within the DOT requirements. ¶SUMF ¶ 47. DOT rules afford fewer breaks,

less often, with more flexibility than the preempted California meal and rest break rules. *Int'l*

*Bhd. Of Teamsters, Loc. 2785 v. Fed. Motor Carrier Safety Admin.,*986 F.3d 841, 845.

Therefore, Halliburton has established that Claimant's California meal and rest break

claims are without merit.

Halliburton offers an interim decision coming to a similar preemption conclusion on

similar facts in *Valdovinos v Halliburton* (May 11, 2022, JAMS Arbitration No. 1130009128).

Claimant objected on the grounds including that the interim decision was under review. This

arbitrator has conducted their own preemption analysis and has not relied on the *Valdovinos* interim decision.

Claimant has not demonstrated any triable issue of material fact on the preemption issue.

Claimant offers evidence that he performed work other than driving, but that does not negate his admission that he is subject to the HOS. 49 C.F.R. § 395.2 [on duty time includes time driver spends performing other work for motor carrier.]

Claimant contends Halliburton is estopped from claiming he was an operator of a property-carrying motor vehicle subject to the federal HOS requirements because Halliburton asserted in its motion to compel arbitration that Claimant is not a "transportation worker" for purposes of exemption from the Federal Arbitration Act. 9 U.S. C. § 1 [excluding from the FAA, "seamen, railroad employees, [and] any other class of workers engaged in foreign or interstate commerce"]; *Brasher, et al v Halliburton Energy Services, Inc.* Case No 1:20-cv-0505 at 9. Halliburton argued that Rodriguez's driving was incidental to his work at the oilfields, and the district court agreed.  It determined that the, "facts fail to demonstrate that Halliburton was in the transportation industry or that Plaintiffs are 'transportation workers,'" because the mission of Halliburton is not to move goods, and Claimant is employed in the oil/energy industry, not the transportation industry. *Brasher, supra,* at pp. 9-10.

But Halliburton is not estopped because the issues are not identical.  A "transportation worker," for purposes of the FAA exemption, works in the transportation industry, the mission of which is movement of goods.  But whether or not Claimant is a transportation worker within the meaning of the FAA does not determine whether FMSCA preemption applies.  FMSCA preemption applies to "operators of commercial motor vehicles" and are thus "subject to FMCSA's HOS rules." 83 Fed.Reg. 6747001, *Teamsters* 986 F3d at 845.  Claimant's testimony

MEMORANDUM AND ORDER ON MOTION FOR SUMMARY JUDGMENT OR ADJUDICATION- 10

conceded that he operated commercial motor vehicles and that he is subject to FMCSA's HOS rules. This is not inconsistent with the prior finding that he is not a "transportation worker" excluded from the FAA.

Claimant also contends that, even if his meal and rest break claims are preempted, he is entitled to compensation for times he was clocked out for any period during which he was under Halliburton's control, including the times he was clocked out for meal breaks that he did not take. Opp p. 2. He points out that, once an employee demonstrates that he performed work for which he was not compensated, the fact of damage is certain and only the amount is in question. But Claimant testified he was paid for the time he was clocked out for meals breaks that he did not take. SUMF ¶ 51. [Agreeing he was "paid then for [his] meal and rest breaks because [he] padded [his] time."] Claimant has not established a triable issue of fact as to whether he performed work for which he was not paid.

### b.  Halliburton's Estoppel Defense (Certification and Padding)

Because Claimant's meal and rest break claims are preempted, the Arbitrator does not reach Halliburton's argument that Claimant is estopped from claiming meal and rest breaks because he expressly certified that his timecards were accurate and because he admitted to padding his time. (Halliburton offers evidence that Claimant signed a statement on each timecard certifying its accuracy.  SUMF ¶¶ 43-45.Claimant testified that, when he didn't get to take a meal break, he was trained to just pad his hours to account for the missed break.  SUMF ¶51. He said, "That's how we were trained." He agreed that he was "paid then for [his] meal and rest breaks because [he] padded [his] time." Ibid. Rodriguez points out that an employer may not use equitable principles, such as unjust enrichment, to avoid liability for statutory compensation.)

MEMORANDUM AND ORDER ON MOTION FOR SUMMARY JUDGMENT OR ADJUDICATION- 11

## 2.  **ON-CALL TIME AND REPORTING TIME CLAIMS**

In his third claim, Claimant seeks compensation for time he spent at home on-call, time he spent preparing to report to the work site, and other time he contends was spent under control of Halliburton, such as time spent on site resting in his truck.  The time could potentially be compensable as on-call time or reporting time, and he combines authority for these theories.  The standards are different; thus, the two grounds will be analyzed separately. *See Casas v. Victoria's Secret Stores, LLC,* 2014 WL 12708972, at *6 (C.D. Cal. Oct. 20, 2014)

### *a.  On-Call Time*

With respect to on-call time, Claimant contends he should be compensated for time spent on-call, waiting to be called into work by a supervisor, because he was required to be on-call 24 hours a day, six days a week, and was required to report to work within one hour of being called. Halliburton contends the on-call time is not compensable because Claimant was not required to remain on site and the geographical and time limits of the on-call arrangement were reasonable, allowing him to effectively engage in private pursuits.

The parties agree that the standard for determining whether an employee is entitled to compensation for on-call time is essentially the same under federal and California law. *Complaint* ¶ 16; *Halliburton MPA* p. 14. On-call time is only compensable if the restrictions placed on the on-call time of the employee are such that the *employee is unable to effectively engage in private pursuits.* Cal. Div. Labor Standards Enforcement Manual (DLSEM) § 46.6.3.

MEMORANDUM AND ORDER ON MOTION FOR SUMMARY JUDGMENT OR ADJUDICATION- 12

Seven factors are considered. *Gomez v. Lincare, Inc.* 173 Cal.App.4th 508, 523-524 (2009). They are discussed here in turn:

### i. *Whether there was an on-premises living requirement*

It is undisputed that Claimant was not required to live on premises.

Halliburton asserts that no California case finds on-call time compensable where the employee does not live on premises. *See also Pilkenton v. Appalachian Reg'l Hosp., Inc.* 336 F. Supp. 334, 338 (W.D. Va. 1971) [[Claimant offers no contrary citation.]]

This factor weighs heavily against Claimant's claim.

### ii. *Whether there were excessive geographical restrictions on the employee's movements*

Claimant was required to be sufficiently close to work to be able to respond within one hour. He testified he needed to be "within 30 minutes of my home," in order to get home, prepare for work, and travel to work. SUMF ¶20. He stayed within sufficient range that he never had a problem reporting to work on time. SUMF ¶ 30. He lived 15 minutes from the shop. ¶ SUMF ¶ 27. In deposition, he agreed that one hour was a "reasonable" amount of time to get there. ¶SUMF 27. He testified that the one hour rule was not really enforced, he has taken up to three hours, and he has never been written up. SUMF ¶¶ 25, 28.

In *Taylor v. Am. Guard and Alert, Inc* 162 F.3d 1169 (9th Cir. 1998)(unpublished), a 35-mile geographical limit was held not to be excessive, and the Ninth Circuit approved of cases holding that it is not excessive to require an employee to remain within 20 minutes of the worksite.

This factor weighs against Claimant's claim.

MEMORANDUM AND ORDER ON MOTION FOR SUMMARY JUDGMENT OR ADJUDICATION- 13

### iii.    *Whether the frequency of the calls was unduly restrictive*

In *Bright v. Houseton Nw. Med. Ctr.,* 934 F.2d 671, 674 (5th Cir. 1991) on-call time was

not compensable notwithstanding four to five callouts per week with a 20-minute reporting

requirement.

Halliburton points out there were periods in which Claimant was only called out 1-2 days

in a 6-day period of on-call time. But the evidence does not suggest that was typical.

This is a neutral factor.

### iv.    *Whether a fixed time limit for the employee to respond to a call was unduly restrictive;*

Claimant had at least an hour to report to work.  SUMF ¶ 25. In *Taylor v. American*

*Guard and Alert, Inc,* 162 F.3d 1169 (1998, unpublished), the Ninth Circuit found a one-

hour response time requirement was not unduly restrictive.

This factor weighs against Claimant's claim.

### v.    *Whether the on-call employee could easily trade on-call responsibility*
-

Halliburton has not established that on-call responsibility could be easily traded.

Claimant declares he had to request personal and vacation days in advance, and could not

do so in response to a call to work.

This factor may support Claimant's claim, but Claimant cites no authority that this

sole factor can sustain a claim that the employee is unable to effectively engage in private

pursuits.

MEMORANDUM AND ORDER ON MOTION FOR SUMMARY JUDGMENT OR ADJUDICATION- 14

### vi.     *Whether the use of a pager or cell phone could ease restrictions*

Claimant was able to carry a cell phone to receive calls, so did not need to wait by a landline. SUMF ¶19-20.  He testified that he was able to call a supervisor to ascertain the likelihood he would be called to work. SUMF ¶ 21.

This factor weighs against Claimant's claim.


### vii.    *Whether the employee had actually engaged in personal activities during on-call time.*

Halliburton's only express restriction on personal activities during on-call time was that Claimant not consume alcohol.

Claimant declared that he did not schedule doctor's appointments or haircuts or travel out of town when he was on-call.  But he testified the engaged in extensive personal activities during on-call time, including taking his children to school, dining out with his family, visiting extended family, sleeping eating, and watching TV, among other things. SUMF ¶20.)

This factor weighs against Claimant's claim.


In sum, the seven factors here, taken together, weigh heavily toward a finding that on-call time was not compensable because Claimant was able to effectively engage in private pursuits while he was on-call.

This conclusion is consistent with many illustrative cases:

In *Brock v. El Paso Natural Gas Co,* 826 F.2d 369, 373-375 (5th Cir. 1987), on-call time was not compensable where workers were required to be within hailing distance of an alarm station but were free to engage in personal activities.

In *Gomez v. Lincare,* 173 Cal.App.4th 508, (2009), on-call time was not compensable where the plaintiff was not required to live on-site, was required to return a call within 30 minutes, and was required to report to work within 2 hours.

In *Berry v. County of Sonoma,* 30 F.3d 1180, (9th Cir, 1994), on-call time was not compensable where plaintiff was not required to live on premises, and was required to respond to a call within 15 minutes. Employees actually engaged in personal activities during on-call time including socializing with friends and family, dining out, shopping, reading, watching TV and enjoying hobbies. *Id.*, 1185-1186.

In *Owens v. Local No. 169, Ass'n of Western Pulp & Paper Workers,* 971 F.2d 347 (9th Cir. 1992) on-call time was not compensable where mechanics were not required to remain on premises and were not required to remain at home to receive calls.

In *Isner v. Falkenberg/Gilliam & Assocs., Inc.,* 160 Cal.App.4th 1393, 1396-1397 (2008), on-call time was not compensable where employees were required to remain within hearing distance of alarm but free to use on-call time as they pleased.

In *Emps. Int'l Union, Local 102 v. Cnty. Of San Diego,* 60 F.3d 1346, 1355 (9th Cir. 1995), it was presumed that, because rangers were on standby at their residences, they almost certainly engaged in personal activities.

In *Carman v. Yolo County Flood Control & Water Conservation Dist.* 535 F. Supp.2d 1039 (E.D. Cal 2008) on-call time was not compensable, despite live-on-premises requirement, where plaintiff could engage in personal activities while on-call.

In *Watson v. Yolo County Flood Control & Water Conservation Dist.,* 2007 WL 3034267 (E.D. Cal. Oct. 17, 2007) on-time call was not compensable where plaintiff was required to remain on the reservation and respond to alarms within 30 minutes.

In an opinion letter, the U.S. Department of Labor (DOL) Wage and Hour Department (WHD) determined that on-call time was not compensable where the employee was required to be reachable at all times, to abstain from alcohol and other substances, and to report to work within one hour. WHD Opinion Letter, FLSA2008-14NA, 2008 WL 5483054, at * 1-2 (Dec. 18, 2008.)

Halliburton has established that Claimant was able to effectively engage in private pursuits while he was on-call.

Claimant has not demonstrated any triable issue of material fact on this issue.

Claimant offers evidence that he did not schedule appointments during on-call time and could not have obtained other employment during on-call periods. However, "unilateral decisions to avoid personal activities while on call does not change an employee's ability to engage in activities, *Gomez, supra,* at 524, and "an employee need not have substantially the same flexibility or freedom as he would if not on call, else all or almost all on-call time would be working time, a proposition that the settled case law and the administrative guidelines clearly reject." *Brigham v. Eugene Water and Elec. Bd.,* 357 F.3d 931, 936 (2004).

It would be inconsistent with the on-call authorities above to award Claimant compensation for on-call time 24 hrs per day, 6 days per week, during which he engaged in only minimally restricted personal activities at home or in the vicinity of home.

The Arbitrator concludes as a matter of law that Claimant was effectively able to engage in private pursuits during on-call time, the geographical and time limits were reasonable, and his on-call time is not compensable.

Claimant also argues he should be compensated for half hour breaks that were deducted from his time sheets during which he rested at the job sites. He argues that during these rest periods he was under Halliburton's control. He offers evidence that he had to remain on site, attentive to calls to move his truck or respond to the customer's needs. E.g. Opp SUMF ¶285, 127-132, 137, 149, 174, 134, 138. This claim is without merit because the undisputed evidence establishes that Claimant was able to effectively engage in personal activities during his meal breaks.

## b. Reporting Time

Reporting time provisions impose a penalty (capped at four hours) when an employee is required to report to work, and reports to the work site, but is not put to work for at least half their usual day's work. *Price v. Starbucks Co.,* 192 Cal.App.4th 1136, 1146 (2011); Wage Order 16.[1] The penalty is designed to ensure proper notice and scheduling. *Ward v. Tilly's,* 31

_____

[1] Wage Order 16 applies in the "drilling" industry, and provides "Each workday that an employee is required to report to the work site and does report, but is not put to work, or is furnished less than half of his or her usual or scheduled day's work, the employer shall pay him or her for half the usual or scheduled day's work . . ." Cal. Code Regs. tit. 8, § 11160.

MEMORANDUM AND ORDER ON MOTION FOR SUMMARY JUDGMENT OR ADJUDICATION- 18

Cal.App.5[th] 1167, 1182 (2019).  Claimant  points out that an employee is entitled to compensation for time under control of the employer, waiting, even if not working.  Opp p.  3; *Morillion v. Royal Packing Co*, 22 Cal.4[th] 575, 582-586 [employee subject to employer's control does not have to be working to be compensated].

But Claimant testified that when he received a call to work, and went to his work site, he was actually put to work, and he was paid.

Therefore, Halliburton has established that Claimant's reporting time claims are without merit.

Claimant has not demonstrated any triable issue of material fact on this issue.

Claimant argues he should be compensated for the hour or so between being called to work and reporting to work, when he was at home reviewing call sheets or making phone calls in preparation for work.  He relies on *Ward v. Tilly's,* 31 Cal.App.5[th] 1167, 1182 (2019), which held that mercantile workers who had to call-in two hours before a shift to see if they were scheduled were entitled to reporting time.  But mercantile workers are governed by Wage Order 7, which provides penalties when the employee "report[s] for work."  The parties agree Claimant was governed by Wage Order 16, for the drilling industry, which provides penalties when the employee "report[s] to the work *site.*"  Here, Claimant was put to work and was paid every time he reported to the site, as he testified.

Claimant offers evidence that he sometimes telephoned his supervisor on his own initiative to see if he would be called to the worksite.  He seems to claim this created compensable reporting time under Wage Order 7 (which applies to time reporting to "work," as compared to Wage Order 16 [reporting to "worksite"].)  But even under Wage Order 7, when an employee voluntarily calls the supervisor to ascertain their schedule, reporting-time pay is not triggered.

MEMORANDUM AND ORDER ON MOTION FOR SUMMARY JUDGMENT OR ADJUDICATION- 19

*Tilly v. Ward, supra.* The employee cannot unilaterally trigger reporting-time pay by contacting their employer when they are not required to do so. *Gordon v. Aerotek, Inc.,* 2017 WL 8217410, at * 7 (C.D. Cal. Oct. 12, 2017).

### 3.   CELL PHONE EXPENSES

Claimant seeks reimbursement of cell phone expenses pursuant to Cal. Labor Code, § 2802. Section 2802 provides for recovery of expenses where (1) an employee makes an expenditure or incurs a loss, (2) in direct consequence of the employee's discharge of duties, or obedience to the directions of the employer; and (3) the expenditures or losses were necessary.  The employee has the burden of proving each element, including specific costs. *Cassady v. Morgan, Lewis & Bockius LLP,* 145 Cal.App.4th 220, 230, 233-234 (2006)

Halliburton contends the cell phone was not required or necessary to the work, and that Claimant's expense are speculative without evidentiary support.

Claimant declares that his monthly cell phone bill is "about $80" and he wants "like $40 a month" to be reimbursed. Rodriguez Dec., ¶ 22.) Claimant was asked for his cell phone records in discovery and did not produce them. SUMF ¶ 56.

In *Herrera v. Zumiez, Inc.,* 953 F.3d 1063, 1078 (9th Cir. 2020) a claim for cell phone expenses was dismissed where the plaintiff did not provide specific facts as to the calls and costs incurred.

Halliburton has demonstrated an absence of evidence of specific costs necessarily incurred in discharge of Claimant's duties.

Claimant has not demonstrated any triable issue of fact on this issue.

Claimant offers his declaration to demonstrate that, as a practical matter, the cell phone was necessary. Claimant testified in deposition that no one told him he had to use his personal cellphone on the job. SUMF 55. Halliburton offers evidence it did not have a rule requiring a cell phone for work, and it discouraged using a cell phone while driving. SUMF 54. It is undisputed Halliburton provided a two-way radio. SUMF 54-55. Moreover, regardless of whether the cellphone was necessary to Claimant's work, he has not presented evidence of specific resulting expenses. When Halliburton requested his cell phone bills or other evidence of specific costs incurred, Claimant did not produce them.

Halliburton is entitled to judgment as a matter of law on the cell phone reimbursement claim.

### 4.  OVERTIME CALCULATION/ PER DIEM OR BONUS

Claimant regularly received per diem payments when his work took him to locations away from the shop. He contends Halliburton improperly calculated his overtime pay when it omitted "fixed bonuses he received such as a per diem rate" from his regular rate. Halliburton contends it properly excluded per diem payments when it calculated Claimant's regular rate for purposes of computing overtime.

Per diem payments are not part of a regular rate for purposes of calculating overtime. 29 C.F.R. § 778.217(b)(3);  DLSE, Enforcement Policies and Interpretations Manual, § 49.1.2.4(2) (Mar. 2010) ["regular rate" excludes "reasonable payments for travelling expenses, or other expenses, incurred by an employee" in the furtherance of his employer's interest and properly reimbursable to the employee, and similar payments; the arbitrator gives the DLSE Manual persuasive weight]; WHD Opinion Letter FLSA2004-3, 2004 WL 2146923, at *1 (May 13,

MEMORANDUM AND ORDER ON MOTION FOR SUMMARY JUDGMENT OR ADJUDICATION- 21

2004).   California follows the federal standard on this issue. *Prachasaisoradej v. Ralphs Grocery Co.,* 42 Cal.4th 217, 242, n. 14 (2007)

Halliburton has demonstrated that the "fixed bonus . . . per diem" payments (as Claimant describes them) were excludable per diem payments. Meal per diems, paid when an employee is required to be away from home, are properly excluded from the regular rate. *Sharp v. CGG Land (U.S.) Inc.,* 840 F.3d 1211, 1213-1215 (10th Cir. 2016); see also DOL Field Operations Handbook § 32d05a(c) (2020) Claimant testified that he received the $25/day (or $12.50/half day) per diem only when he was sent out on a job, not when he worked in the shop.  SUMF ¶¶ 52-52.  The per diem payments were thus reimbursements and not part of the payments received "regularly" for work.

The per diem amounts of $12.50 and $25 per day were not unreasonably large so as to be included in the regular rate of pay; they were reasonable per se in view of the GSA rate for Kern County of about $60 per day. *See Mundell v. DBA/DMC Mining Servs/ Corp.* 2014 WL 7911147, at * 2 (M.D. Pa. Apr. 2, 2014)

Claimant cites the California Supreme Court's statement that, "in deciding how to factor a flat sum bonus into an employee's overtime pay rate, we are obligated to prefer an interpretation that discourages employers from imposing overtime work and that favors the protection of the employee's interests." *Alvarado v. Dart Container Corp. of California*, 4 Cal. 5th 542, 562 (2018). But the per diem payments were not flat sum bonuses. *Alvarado* involved flat attendance bonuses for weekend work, not per diem reimbursements.

Therefore, Halliburton is entitled to summary judgment on the overtime claim.

## 5.  INACCURATE STATEMENTS

Claimant contends his wage statements were inaccurate in violation of Labor Code § 226

Halliburton contends the claim fails as a matter of law because it is undisputed that the

statements show the actual amount he was paid and accurately reflect his time sheets.

Section 266 specifies particular information that must be included in a wage statement.  A

section 226 claim requires proof of (1) violation of a statute, (2) that is knowing and intentional,

(3) resulting in injury

No evidence of a violation has been presented.  Claimant contends the statements do not

accurately identify "regular" and "overtime," and do not identify regular hourly rate, overtime

rate, or hours attributable to each. But each of Claimant's wage statements sets forth all appliable

hourly rates and corresponding number of hours worked at each rate, as well as his gross wages,

total hours worked, itemized deductions, net wages earned, and the pay period.  SUMF 57

As required by section 226, the statements accurately show what Claimant was actually paid.

Moreover, Claimant produces no evidence that any violation of section 226 was knowing or

willful or resulted in injury. *Raines v Coastal Pac. Food Distributors, Inc.* 23 Cal.App.5th 667,

676 (2018) [no injury where statement can be corrected by simple math].

Halliburton is entitled to summary judgment on the wage statement claim.


## 6.  DERIVATIVE CLAIMS

Claimant's remaining claims are derivative of the previously discussed claims and thus

without merit.

**IT IS THEREFOR ORDERED:**

HALLIBURTON is entitled to summary judgment as a matter of law on all claims and therefore HALLIBURTON's motion is granted in all respects.  The administrative fees of the American Arbitration Association totaling $2,950.00 and the compensation of the arbitrator totaling $34,275.00 shall be born as incurred.  All claims not expressly granted herein are hereby denied.

Dated:  July 6,  2022

Hon. Frank J. Ochoa (Ret.) Arbitrator

MEMORANDUM AND ORDER ON MOTION FOR SUMMARY JUDGMENT OR ADJUDICATION- 24

# EXHIBIT 2



# Demand for Arbitration Form (continued)
## Instructions for Submittal of Arbitration to JAMS

TO RESPONDENT (PARTY ON WHOM DEMAND FOR ARBITRATION IS MADE)                    Add more respondents on **page 6**.

| RESPONDENT NAME | HALLIBURTON ENERGY SERVICES, INC. |
|---|---|

| ADDRESS | see lawsuit paragraph 2 |
|---|---|

| CITY | | STATE | | ZIP | |
|---|---|---|---|---|---|

| PHONE | | FAX | | EMAIL | |
|---|---|---|---|---|---|

RESPONDENT'S REPRESENTATIVE OR ATTORNEY (IF KNOWN)

| REPRESENTATIVE/ATTORNEY | see proof of service |
|---|---|

| FIRM/ COMPANY | |
|---|---|

| ADDRESS | |
|---|---|

| CITY | | STATE | | ZIP | |
|---|---|---|---|---|---|

| PHONE | | FAX | | EMAIL | |
|---|---|---|---|---|---|

FROM CLAIMANT                                         Add more claimants on **page 7**.

| CLAIMANT NAME | RICARDO MARIN RODRIGUEZ |
|---|---|

| ADDRESS | contact Plaintiff'sCounsel |
|---|---|

| CITY | Bakersfield | STATE | Ca. | ZIP | |
|---|---|---|---|---|---|

| PHONE | | FAX | | EMAIL | |
|---|---|---|---|---|---|

CLAIMANT'S REPRESENTATIVE OR ATTORNEY (IF KNOWN)

| REPRESENTATIVE/ATTORNEY | see lawsuit |
|---|---|

| FIRM/ COMPANY | |
|---|---|

| ADDRESS | |
|---|---|

| CITY | | STATE | | ZIP | |
|---|---|---|---|---|---|

| PHONE | | FAX | | EMAIL | |
|---|---|---|---|---|---|

# Demand for Arbitration Form (continued)

## Instructions for Submittal of Arbitration to JAMS

## MEDIATION IN ADVANCE OF THE ARBITRATION

☐ If mediation in advance of the arbitration is desired, please check here and a JAMS Case Manager will assist the parties in coordinating a mediation session.

## NATURE OF DISPUTE / CLAIMS & RELIEF SOUGHT BY CLAIMANT

**CLAIMANT HEREBY DEMANDS THAT YOU SUBMIT THE FOLLOWING DISPUTE TO FINAL AND BINDING ARBITRATION. A MORE DETAILED STATEMENT OF CLAIMS MAY BE ATTACHED IF NEEDED.**

See lawsuit. Employee wage and hour. The court ordered this is subject to arbitration with a $50 filing fee from Plaintiff.

**AMOUNT IN CONTROVERSY (US DOLLARS)**   $100,000 plus

# JAMS

# Demand for Arbitration Form (continued)

### Instructions for Submittal of Arbitration to JAMS

## ARBITRATION AGREEMENT

This demand is made pursuant to the arbitration agreement which the parties made as follows. **Please cite location of arbitration provision and attach <u>two copies</u> of entire agreement.**

| ARBITRATION PROVISION LOCATION |
| --- |
| Case needs to be heard in Bakersfield where employment is and all witnesses reside |

## RESPONSE

The respondent may file a response and counter-claim to the above-stated claim according to the applicable arbitration rules. **Send the original response and counter-claim to the claimant at the address stated above with <u>two copies</u> to JAMS.**

## REQUEST FOR HEARING

| REQUESTED LOCATION |
| --- |
| |

## ELECTION FOR EXPEDITED PROCEDURES (IF COMPREHENSIVE RULES APPLY)

See: **Comprehensive Rule 16.1**

☐  By checking the box to the left, Claimant requests that the Expedited Procedures described in JAMS Comprehensive Rules 16.1 and 16.2 be applied in this matter. Respondent shall indicate not later than seven (7) days from the date this Demand is served whether it agrees to the Expedited Procedures.

## SUBMISSION INFORMATION

| SIGNATURE | | DATE | 9-8-20 |
| --- | --- | --- | --- |

| NAME (PRINT/TYPED) | Karl Gerber |
| --- | --- |

# Demand for Arbitration Form (continued)

## Instructions for Submittal of Arbitration to JAMS

**Completion of this section is <u>required for all consumer or employment claims</u>.**

## CONSUMER AND EMPLOYMENT ARBITRATION

Please indicate if this is a CONSUMER ARBITRATION. For purposes of this designation, and whether this case will be administered in California or elsewhere, JAMS is guided by *California Rules of Court Ethics Standards for Neutral Arbitrators, Standard 2(d) and (e)*, as defined below, and the JAMS Consumer and Employment Minimum Standards of Procedural Fairness:

☑ <u>YES</u>, this is a CONSUMER ARBITRATION.

☐ <u>NO</u>, this **is not** a CONSUMER ARBITRATION.

"Consumer arbitration" means an arbitration conducted under a pre-dispute arbitration provision contained in a contract that meets the criteria listed in paragraphs (1) through (3) below. "Consumer arbitration" excludes arbitration proceedings conducted under or arising out of public or private sector labor-relations laws, regulations, charter provisions, ordinances, statutes, or agreements.

1. The contract is with a consumer party, as defined in these standards;
2. The contract was drafted by or on behalf of the non-consumer party; and
3. The consumer party was required to accept the arbitration provision in the contract.

"Consumer party" is a party to an arbitration agreement who, in the context of that arbitration agreement, is any of the following:

1. An individual who seeks or acquires, including by lease, any goods or services primarily for personal, family, or household purposes including, but not limited to, financial services, insurance, and other goods and services as defined in section 1761 of the Civil Code;
2. An individual who is an enrollee, a subscriber, or insured in a health-care service plan within the meaning of section 1345 of the Health and Safety Code or health-care insurance plan within the meaning of section 106 of the Insurance Code;
3. An individual with a medical malpractice claim that is subject to the arbitration agreement; or
4. An employee or an applicant for employment in a dispute arising out of or relating to the employee's employment or the applicant's prospective employment that is subject to the arbitration agreement.

NOTE: JAMS is guided by its Consumer Minimum Standards and Employment Minimum Standards when determining whether a matter is a consumer matter. In addition, JAMS may treat a matter as a consumer matter and apply the Employment Minimum Standards where an individual claims to have been misclassified as an independent contractor or otherwise improperly placed into a category other than employee or applicant for employment.

## EMPLOYMENT MATTERS

If this is an EMPLOYMENT matter, Claimant must complete the following information:

Private arbitration companies are required to collect and publish certain information at least quarterly, and make it available to the public in a computer-searchable format. In employment cases, this includes the amount of the employee's annual wage. The employee's name will not appear in the database, but the employer's name will be published. Please check the applicable box below:

☐ Less than $100,000     ☐ $100,000 to $250,000     ☐ More than $250,000     ☑ Decline to State

## WAIVER OF ARBITRATION FEES

In certain states (e.g. California), the law provides that consumers (as defined above) with a gross monthly income of less than 300% of the federal poverty guidelines are entitled to a waiver of the arbitration fees. In those cases, the respondent must pay 100% of the fees. Consumers must submit a declaration under oath stating the consumer's monthly income and the number of persons living in his or her household. Please contact JAMS at 1-800-352-5267 for further information. Note: this requirement is not applicable in all states.

1

PROOF OF SERVICE

2

3
    I am employed in the City of Los Angeles, State of California. I am over the age of 18 years and not a party to the within action.  My business address is 13418 Ventura Boulevard, Sherman Oaks, CA. 91423. On the below date I served the following documents:

4

5

## ARBITRATION DEMAND & COMPLAINT

6

7
**CHAMBERLAIN HRDLICKA
WHITE WILLIAMS & AUGHTRY,
P.C.**
By: *s/ Annette A. Idalski*

8
Annette A. Idalski
Brian A. Smith

9
191 Peachtree Street, N.E., 34th floor
Atlanta, GA 30303-1747

10
Telephone: (404) 658-5386
annette.idalski@chamberlainlaw.com

11
brian.smith@chamberlainlaw.com

**SHEPPARD MULLIN RICHTER &
HAMPTON**
By: s/ Thomas Kaufman
Thomas Kaufman
Cal. Bar No. 177936
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067-6055
Telephone: 310.228.3700
Facsimile: 310.228.3701
E mail: tkaufman@sheppardmullin.com

12

13
*Attorney for Defendant,  Halliburton
Energy Services, Inc.*

14

15
Said documents were served in each of the following manners as indicated by an "(X)" before such mode of service:

16

17

18
(☐) **BY U.S. MAIL:  I caused each such envelope with postage thereon fully prepaid, to be placed in the United States mail at Sherman Oaks, CA on .  I am familiar with the practice of my employer for collection and processing of the correspondence for mailing, said practice being that in the ordinary course of business, mail is deposited in the United States mail the same day as it is place for collection.**

19

20
(☐) BY OVERNIGHT DELIVERY: I caused such envelope to be delivered to the Federal Express Office with delivery fees fully prepaid for overnight delivery to the office(s) of the addressee(s).

21

22
(☐) BY "FAX": to the above-named person(s).  Upon completion of said facsimile transmission, the transmitting machine issues a transmission report showing the transmission was complete and without error.

23

24
(☒) ELECTRONIC MAIL: Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the document to be sent to the persons at the e-mail address(es) listed above on.

25

26
(☐) BY PERSONAL SERVICE: by delivering a copy of the document(s) listed above to the person(s) at the address(es) set forth above.

27

28
(☐) **STATE: I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.**

---

() FEDERAL:  I declare under the laws of the United States of America that I am employed in the office of a member of the Bar of this Court at whose direction the service was made and that the foregoing is true and correct.

Executed on September 8, 2020, at Sherman Oaks, California.

Karl Gerber

Proof of Service